IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMANDA LANGE, on behalf of herself
and all others similarly situated,

                Plaintiff,

  v.

INFINITY HEALTHCARE PHYSICIANS, S.C.,
INFINITY HEALTHCARE, INC., THE BOARD OF
DIRECTORS OF INFINITY HEALTHCARE, INC.,
THE COMMITTEE OF THE INFINITY
HEALTHCARE, INC. EMPLOYEES' FLEXIBLE
PROFIT SHARING PLAN, and JOHN DOES 1–30,

                Defendants.

OPINION and ORDER

20-cv-737-jdp

---

This is a proposed collective and class action. Plaintiff Amanda Lange contends that her former employer, defendant Infinity Healthcare Physicians, S.C., failed to pay her in accordance with the Fair Labor Standards Act, and that several fiduciaries failed to manage her employer-sponsored retirement plan in accordance with the Employee Retirement Income Security Act of 1974 (ERISA).[1] The fiduciaries named as defendants move to dismiss Lange's ERISA claims on multiple grounds, including that Lange lacks standing to sue. Dkt. 23. For simplicity, the court will refer to these defendants as the "Infinity fiduciaries."

The Infinity fiduciaries have adduced evidence that their alleged mismanagement of the retirement plan didn't affect the specific fund in which Lange invested her assets, and Lange has failed to adduce any evidence to the contrary. The court concludes that Lange lacks

---

[1] According to Lange's amended complaint, Dkt. 20, the plan's fiduciaries include defendants Infinity Healthcare, Inc. (the plan's administrator); Board of Directors of Infinity Healthcare, Inc.; Committee of the Infinity Healthcare, Inc. Employees' Flexible Profit Sharing Plan; and John Does 1–30 (the members of the board of directors and the committee).

standing to assert her ERISA claims, so the court will grant the Infinity fiduciaries' motion and dismiss those claims under Federal Rule of Civil Procedure 12(b)(1).

ALLEGATIONS OF FACT

The following allegations are drawn from Lange's amended complaint, Dkt. 20.

Defendant Infinity Healthcare Physicians sponsored and operated a defined-contribution pension plan on behalf of its employees from August 2014 to March 2019, when the plan ceased to exist after Infinity Healthcare Physicians was acquired by another entity and the plan was closed.[2] Plaintiff Amanda Lange contributed to the Infinity plan while it was open, and she is still a plan participant.

The plan had about $136 million in assets, invested in a variety of funds. Some of the plan's investment options were actively managed, meaning that participants' assets were placed into a mutual fund overseen by a portfolio manager, who charged a fee to the plan for his or her services. Other investment options were passively managed, meaning that participants' assets were placed into a market-indexed mutual fund. Lange contends that the Infinity fiduciaries offered a set of actively managed investment funds to plan participants without "mak[ing] a specific and informed finding" that the funds would outperform passively managed (and therefore lower-cost) index funds. Dkt. 20, ¶ 197.

---

[2] "A defined contribution plan is one where employees and employers may contribute to the plan, and the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on [her] behalf will provide." *Hughes Aircraft Co. v. Johnson*, 525 U.S. 432, 439 (1999) (internal quotation marks omitted). Under such a plan, "each beneficiary is entitled to whatever assets are dedicated to [her] individual account." *Id.* In contrast, a defined-benefit plan "consists of a general pool of assets rather than individual dedicated accounts," under which "members have a right to a certain defined level of benefits." *Id.* at 439–40.

The Infinity fiduciaries contracted with Great-West Life & Annuity for various recordkeeping and administrative services, including maintaining plan records, tracking participants' account balances and investment choices, processing transactions, and the like. The Infinity fiduciaries failed to solicit quotes or obtain competitive bids for these services, causing the plan to pay unreasonable, above-market fees to Great-West.

ANALYSIS

Lange seeks to represent a class of plan participants under ERISA, contending that the Infinity fiduciaries violated their fiduciary duties to plan participants by offering imprudent actively managed investment options and by paying excessive fees for recordkeeping and administrative services. To have standing to bring these claims, Lange must show three things: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable" to the Infinity fiduciaries' challenged conduct; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The Infinity fiduciaries contend that Lange cannot show that she suffered an injury in fact because she did not invest in any of the challenged actively managed investment funds or in any fund that paid recordkeeping fees to Great-West. The court agrees that Lange lacks standing to assert her ERISA claims, so it does not need to consider the Infinity fiduciaries' alternative argument that Lange's complaint fails to state a claim for relief.

The Infinity fiduciaries support their motion with documentary evidence, including Lange's retirement plan statements, publicly available government filings, and plan prospectuses. Lange objects that the Infinity fiduciaries have "attempt[ed] to expand this motion into one for summary judgment" by submitting these documents. Dkt. 25, at 10. But

standing is a question of subject-matter jurisdiction, and "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)) (alteration in original). So the court may consider these documents without converting the motion into a motion for summary judgment.

Lange asserts six claims in her complaint. Her first and second claims (which aren't at issue here) are based on her allegations that Infinity Healthcare Physicians violated her rights under the Fair Labor Standards Act. In her third through sixth claims, she contends that the Infinity fiduciaries breached their fiduciary duties under ERISA in various ways. In her third claim, she contends that the Infinity fiduciaries violated their fiduciary duties of prudence and loyalty by paying excessive recordkeeping fees to Great-West. In her fourth claim, she contends that the Infinity fiduciaries violated the same duties by choosing imprudent investment options. In her fifth and sixth claims, she contends that defendant Infinity Healthcare, Inc., failed to adequately monitor the payment of recordkeeping fees and failed to adequately monitor the selection of plan investment options. The Infinity fiduciaries move to dismiss Lange's ERISA claims.

A. **Actively managed investment options**

Lange's fourth and sixth claims involve her allegations that the Infinity fiduciaries chose imprudent investment options by choosing more expensive actively managed funds without first ensuring that those funds provided a better value than lower-cost, passively managed funds. Her complaint includes a list of the allegedly imprudent funds. Dkt. 20, ¶ 190. Lange's

4

plan statements, which the Infinity fiduciaries submit in support of their motion, show that all of Lange's retirement assets were invested in a fund called "Vanguard Target Retirement 2045."

Lange doesn't allege in her complaint that the Vanguard 2045 fund was one of the mismanaged funds, so the Infinity fiduciaries say that Lange couldn't have been injured by their choice of actively managed funds. The Infinity fiduciaries chiefly rely on *Thole v. U.S. Bank N.A.*, which involved a putative class action under ERISA. 140 S. Ct. 1615 (2020). The *Thole* plaintiffs were participants in a defined-benefit plan, meaning that they were entitled to receive a fixed amount of benefits each month, regardless of the performance of the plan's investments. *Id.* at 1619–20. The court explained that the plaintiffs lacked standing to sue because regardless of the outcome of the litigation, "they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less." *Id.* at 1619. Lange contends that *Thole* is inapposite because the Infinity plan was a defined-contribution plan, so her benefit payments will depend on the performance of her investments. But the Infinity fiduciaries cite *Thole* for the basic principle that a plaintiff lacks standing if she challenges investment decisions that did not personally affect her, a principle that would apply to both defined-benefit and defined-contribution plans.

The Infinity fiduciaries' evidence regarding Lange's investments calls Lange's standing to assert her ERISA claims into question, so the burden shifts to Lange to adduce "competent proof that standing exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009). Lange has failed to meet this burden. She speculates that fees paid under other funds could have affected the value of the Vanguard 2045 fund because the Vanguard 2045 fund is "essentially made up of other funds." Dkt. 25, at 13. Vanguard prospectuses for the period at issue state that the Vanguard 2045 fund invests its assets in other Vanguard mutual

funds, namely its Total Stock Market Index Fund, Total International Stock Index Fund, Total Bond Market II Index Fund, and Total International Bond Index Fund. *See, e.g.*, Dkt. 18-14, at 46. But none of these funds are included in the list of allegedly imprudent funds in Lange's complaint, either.

Lange also contends that the Infinity fiduciaries' selection of imprudent investment options "impacted all Plan participants, including herself." Dkt. 25, at 12. But she fails to explain why she believes this to be true, and she adduces no evidence to support this conclusion, which she supports with only a general citation to a nine-page span of her amended complaint. The cited portion of the amended complaint primarily consists of allegations about the actively managed funds in which Lange did not invest. She doesn't allege that these funds' management fees were spread across all plan participants in any way. The only allegation that concerns Lange specifically is her allegation that "Plaintiff and the Plan's Participants incurred actual expenses and costs" identified in a chart. Dkt. 20, ¶ 209. But that chart merely sums up the allegedly excessive management costs from the challenged plans—plans in which Lange did not invest. Lange has failed to adduce competent proof to support her allegations that she was harmed by these investment decisions, so she hasn't carried her burden. *Apex Digital*, 572 F.3d at 444.

Lange cites *Boley v. Universal Health Services, Inc.* for the proposition that a plaintiff has standing to sue under ERISA for mismanagement of investment options that she didn't invest in. 498 F. Supp. 3d 715 (E.D. Pa. 2020). But the court's holding in *Boley* relied on the fact that the plaintiffs had "*demonstrated* loss to their own accounts with respect to each of their three claims." *Id.* at 724 (emphasis added). Lange has demonstrated no loss to her own account. Lange also cites *Clark v. Duke University*, in which the court held that named plaintiffs in a

proposed class action had standing to sue regarding mismanagement of funds in which the named plaintiffs hadn't participated. No. 1:16-CV-1044, 2018 WL 1801946, at *4 (M.D.N.C. Apr. 13, 2018). But as in *Boley*, the plaintiffs in *Clark* had adequately alleged that their own plan assets had been injured. *Id.* at *3. The court's holding was based on the principle "that a plaintiff who is injured in his or her own plan assets—and thus has Article III standing—may proceed under [ERISA] on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury." *Id.* at *4 (internal quotation marks omitted).

Lange has adduced no proof that she was injured, so she has failed to carry her burden. The court will dismiss her fourth and sixth claims.

**B. Recordkeeping and administrative services**

Lange's third and fifth claims are based on her allegations that the Infinity plan paid excessive fees for recordkeeping and administrative services to Great-West. The plan's filings with the Internal Revenue Service show that the plan paid Great-West's fees entirely through a payment method known as "indirect compensation" during the period in question. *See, e.g.*, Dkt. 18-6, at 10. Indirect compensation, also known as "revenue sharing," is a method in which recordkeeping service providers collect a percentage of a fund's assets in exchange for their services rather than receiving a fixed fee. "Revenue sharing comes from so-called '12b-1' fees, which are fees that mutual fund investment managers charge to investors in order to pay for distribution expenses and shareholder service expenses." *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1082 (C.D. Cal. 2009), *aff'd*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds by* 575 U.S. 523 (2015). The Vanguard 2045 prospectuses submitted by the Infinity fiduciaries state that the Vanguard 2045 fund paid no "12b-1 Distribution Fee" for any of the years in question. *See, e.g.*, Dkt. 18-12, at 45.

7

Lange says that she has "allege[d] that she suffered an actual injury to her Plan account as a result of excessive recordkeeping fees, and that is all that is required at this stage of the litigation." Dkt. 25, at 13. But as before, Lange must do more than rely on the allegations in her complaint to survive a factual challenge to her standing to assert her claims regarding recordkeeping fees. The Infinity fiduciaries have adduced evidence that Vanguard 2045 fund participants did not pay any recordkeeping fees to Great-West. Again, Lange must provide competent proof that she did pay such fees to survive a motion to dismiss these claims. *Apex Digital*, 572 F.3d at 444–45.

Lange speculates that the other funds in which the Vanguard 2045 fund invests its assets might have paid Great-West through revenue sharing. And she further speculates that those payments to Great-West might have been incorporated into the Vanguard 2045 fund's "Acquired Fund Fees and Expenses," which equal 0.15 percent of the fund's assets per year, *see, e.g.*, Dkt. 18-12, at 45. But she doesn't offer any proof or even identify specific funds. She has failed to meet her burden in response to the Infinity fiduciaries' factual challenge to this court's jurisdiction, so the court must dismiss these claims, as well.

One matter remains. The Infinity fiduciaries move to dismiss Lange's claims with prejudice. Although Lange doesn't raise the issue, a court dismissing a complaint for lack of standing "has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). Lange has already amended her complaint once, and she doesn't seek leave to amend a second time. So the court will dismiss her claims without prejudice.

ORDER

IT IS ORDERED that the motion of defendants Infinity Healthcare, Inc.; the Board of Directors of Infinity Healthcare, Inc.; and the Committee of the Infinity Health, Inc. Employees' Flexible Profit Sharing Plan to dismiss the ERISA claims in plaintiff Amanda Lange's amended complaint, Dkt. 23, is GRANTED in part. Lange's ERISA claims are dismissed without prejudice. These defendants are DISMISSED from the case, as are defendants John Does 1–30.

Entered July 15, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge